UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS PARR, VALERIE PARR, and
CORRYL PARR,

      Plaintiffs,                              Case No. 10-13167

v.                                          Honorable Patrick J. Duggan

THE BANK OF NEW YORK MELLON
CORPORATION and BAC HOME LOANS
SERVICING, LP,

      Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 28, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                          U.S. DISTRICT COURT JUDGE

On July 21, 2010, Plaintiffs filed this action against The Bank of New York Mellon Corporation ("Bank of New York") and BAC Home Loans Servicing, LP ("BAC"), alleging that Defendants breached a contract for the sale of a home and violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. Presently before the Court is Defendants' Motion for Summary Judgment, filed on December 7, 2010 pursuant to Federal Rule of Civil Procedure 56. The matter has been fully briefed, and on February 4, 2011, the Court notified the parties that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons stated below, the Court

grants Defendants' Motion.

## I. Factual and Procedural Background

The relevant facts are not disputed. Corryl Parr owned a home located at 201 South Glenhurst, in Birmingham, Michigan. She lost the home to foreclosure, but continued to live there. Bank of New York purchased the home at the sheriff's sale, and employs BAC as its agent. The redemption period expired in December 2009.

Corryl Parr's parents, Thomas and Valerie Parr, soon began negotiating through their attorney, Andrew Munro, to purchase the home from Bank of New York. On December 21, 2009, Munro contacted Defendants' real estate agent, Robert Agnello, and advised him that Corryl Parr would peacefully surrender the property for $2,000 in a "cash for keys" offer. Munro also stated that he had a prospective purchaser for the property at a price between $250,000 and $275,000. Agnello explained that Defendants could not consider any offers until the property was inspected or appraised.

On February 17, 2010, Munro e-mailed Agnello, asking him whether Defendants had a counteroffer, or if they could at least "indicate a range." Defs.' Br. Ex. C at 1. In a phone conversation on February 27, 2010, Agnello told Munro that there was a chance of getting an offer of $325,000 accepted with a $10,000 non-refundable earnest money deposit. Munro responded via e-mail on March 1, 2010, explaining that his clients were on a cruise ship, but that he expected to hear from them the following day. He stated that he knew his clients were interested at that price.

On March 4, 2010, Agnello sent a blank purchase agreement to Munro. Munro responded on March 8, 2010, in an e-mail stating, "Got authority for 325k, will email PA

2

tomorrow." Pls.' Br. Ex. 4. The next day, Munro e-mailed Agnello a "proposed current offer," including a revised purchase agreement. *See* Defs.' Br. Ex. F. Munro had changed the earnest money deposit terms so that only half of the deposit was non-refundable. Munro explained that his clients were pre-approved for financing at $300,000, but would need to seek another approval for $325,000, and were unwilling to risk the entire deposit.

On March 10, 2010, Munro sent Agnello a signed purchase agreement, noting that the deposit check was "on its way." Defs.' Br. Ex. G. Agnello responded that day, stating that although he had forwarded the purchase agreement to Defendants, he was "sure that my broker will have a big problem with those changes." Defs.' Br. Ex. H at 1.

Munro requested an update on March 14, 2010. Agnello promised to provide an update the following day, but noted that the "asset manager handling this does not make the final decision." Defs.' Br. Ex. I at 1. Agnello further explained that the asset manager recommended that Munro's clients write an offer with those terms to give "the best chance of approval by his superiors making the decision." *Id.* Agnello also asked, "what is the relationship of purchaser and your client . . . I assume they are her parents?" *Id.* Munro confirmed that his clients were Corryl Parr's parents.

On March 15, 2010, Agnello sent the following e-mail message to Munro:

> I spoke to asset manager, and it sounds like this is going to get accepted once he gets Proof of Funds from your client... you mentioned your client was taking out a small loan? if so, please provide docs for that personal loan. IF it's a mortgage on property they may not approve it.
>
> Also, the asset mgr thinks his superiors will insist on the $10,000 EMD be non-refundable due to this unique situation.

Defs.' Br. Ex. J. Agnello followed this with an e-mail the next day, stating in part: "The

3

bank was under the impression that this was a cash buyer. They will only proceed with this deal if the EMD is non-refundable." Pls.' Br. Ex. 8 at 2. Munro replied, "Let me get back to you. Is this the only issue outstanding?" *Id.* at 1. Agnello confirmed, "Yes... but I didn't tell the asset manager that it will be a mortgage... but it shouldn't matter with the non-refundable EMD." *Id.*

On March 17, 2010, Munro responded to Agnello in the following message:

> Attached are brokerage statements evidencing the Parrs' ability to pay the entire purchase price for 201 S. Glenhurst in cash. Please also be advised that the Parrs are willing to amend their PA so that the entire 10k deposit is nonrefundable if they do not close. Let me know how you want to handle this amendment. My thought is to have [BAC] counter the current PA with language making the entire deposit nonrefundable. Thanks.

Pls.' Br. Ex. 9. A few days later, on March 23, 2010, Munro suggested "that the Buyers submit a letter modifying their submitted PA making the deposit non refundable. . . Let me know what you and your manager think." Defs.' Br. Ex. M at 1.

The following day, March 24, 2010, Defendants sent a message to Agnello:

> [W]e are proceeding with eviction - thank you. [W]e would only consider the offer again if the family members are willing to pay the unpaid balance owed by the former mortgagor which is considerably more than the amount of their offer. [T]hank you.

Defs.' Br. Ex. N at 1. Agnello forwarded this message to Munro, who did not respond.

Plaintiffs filed this suit in Oakland County Circuit Court on July 21, 2010, asserting claims of breach of contract (Count I); promissory estoppel (Count II); third-party beneficiary contract (Count III); violation of the FDCPA (Count IV); and violation of the Michigan Collection Practices Act, Michigan Compiled Laws § 339.901 (Count V). Defendants removed the suit to this Court on August 10, 2010.

4

On December 7, 2010, Defendants filed their Motion for Summary Judgment. In their Motion, Defendants argue that the contractual claims fail, as the parties did not agree to the alleged terms, and there is no writing sufficient to satisfy the statute of frauds. Defendants contend that the promissory estoppel claim fails because Plaintiffs cannot identify a specific promise upon which they detrimentally relied. As for Plaintiffs' FDCPA claim, Defendants argue that the statute does not apply to or prohibit the conduct at issue.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a

genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

## III. Discussion

### A. Breach of Contract Claims

Plaintiffs allege that Munro's e-mail to Agnello on March 23, 2010, indicating that the earnest money deposit would be non-refundable, established agreement upon all major terms, forming an enforceable contract. Compl. ¶ 21. "A valid contract requires mutual assent on all essential terms." *Eerdmans v. Maki*, 226 Mich. App. 360, 364, 573 N.W.2d 329, 332 (Mich. App. 1997). "Before a contract can be completed, there must be an offer and acceptance." *Id.* "Mere discussions and negotiation cannot be a substitute for the formal requirements of a contract." *Id.* As Plaintiffs allege that Munro's e-mail formed the contract, their argument implies that his e-mail accepted an offer made by Defendants.

Defendants did not make an offer. "An offer is defined as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* (quoting Restatement (Second) of Contracts § 24). Agnello stated to Munro that the asset manager's "superiors" would make the decision. *See* Defs.' Br. Ex. I at 1. Plaintiffs could not justifiably believe

6

that the deal would conclude without such approval.  Thus, Agnello's statements can only be construed as invitations to make an offer.

Even if the Court were to conclude that Defendants made an offer, Plaintiffs failed to accept it.  Plaintiffs argue that Munro's e-mail to Agnello on March 23, 2010, formed an enforceable contract.  Munro's e-mail, however, "suggest[ed] that instead of redoing the PA that the Buyers submit a letter modifying their submitted PA, making the deposit non refundable."  Defs.' Br. Ex. M at 1.  "A mere expression of intention does not make a binding contract."  *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 549, 487 N.W.2d 499, 504 (Mich. App. 1992).  "A contract is made when both parties have executed or accepted it, and not before."  *Id.* at 549, 487 N.W.2d at 503.  Plaintiffs have not alleged that they executed a purchase agreement conforming with Defendants' terms. The Court therefore cannot conclude that Munro's e-mail was an acceptance.

It is also clear that Defendants did not accept any offer made by Plaintiffs.  A contract is not formed where the purported acceptance is expressly subject to another's approval.  *Modern Globe, Inc. v. 1425 Lake Drive Corp.*, 340 Mich. 663, 668, 66 N.W.2d 92, 94-95 (Mich. 1954).  Agnello stated that neither he nor the asset manager could approve the sale, and that the approval must come from the asset manager's "superiors." Plaintiffs rely on e-mail messages between Agnello and Munro, but these messages cannot bind Defendants to the purported contract.  Plaintiffs have not identified any messages stating that the necessary approval was obtained.  Because the contractual prerequisites of offer and acceptance are not satisfied, the parties did not form an enforceable contract.

Defendants argue that Michigan's statute of frauds mandates dismissal of the breach

of contract claim. Because the Court has concluded that no contract was formed, it need not consider whether the statute of frauds precludes enforcement of the alleged contract. The Court grants summary judgment for Defendants on the breach of contract claim.

Plaintiffs assert that Corryl Parr is a third-party beneficiary of the alleged contract between Defendants and her parents. Compl. ¶ 37. Because no contract was formed, Corryl Parr cannot enforce any rights as a third-party beneficiary. The Court accordingly grants summary judgment for Defendants on the third-party beneficiary claim.

## B. Promissory Estoppel Claim

The elements of promissory estoppel are (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; (4) in circumstances such that the promise must be enforced to avoid injustice. *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442, 505 N.W.2d 275, 278 (Mich. App. 1993). The doctrine of promissory estoppel is cautiously applied, and requires a promise that is both "definite and clear." *Id.*

Defendants argue that Plaintiffs have failed to identify a "definite and clear" promise made by Defendants. Although Agnello expressed optimism about the deal, he noted that it would require the approval of the asset manager's superiors. *See* Defs.' Br. Exs. I, J. Agnello stated, "it sounds like this is going to get accepted," but qualified this by noting that the sale may not be approved if it involved a mortgage. Defs.' Br. Ex. J. Agnello's statements were conditional rather than absolute. Plaintiffs have not identified the sort of "definite and clear" promise that requires enforcement through promissory estoppel.

Defendants contend that Plaintiffs never detrimentally relied on Defendants' alleged promises. Plaintiffs disagree, asserting that they invested a considerable amount of time and incurred legal fees throughout these negotiations. To be actionable under the doctrine of promissory estoppel, however, a plaintiff's reliance must be induced by the defendant's promise. *State Bank of Standish v. Curry*, 442 Mich. 76, 84, 500 N.W.2d 104, 107 (Mich. 1993). Plaintiffs invested time and money in this endeavor, but they did so before any alleged promises were made. The Parrs, rather than Defendants, initiated negotiations, presumably based on a desire to allow their daughter to continue living in the home. They cannot claim that promises allegedly made near the end of the negotiations caused them to enter those negotiations in the first place. As Plaintiffs' actions were not induced by any alleged promises, the Court grants summary judgment for Defendants on the promissory estoppel claim.

## C. FDCPA Claim

Plaintiffs allege that Defendants refused to sell the home to the Parrs at a price below the value of the mortgage debt owed by Corryl Parr. Plaintiffs claim that this was an "abusive, deceptive, and unfair" attempt to collect the debt from the Parrs. Compl. ¶ 43. Although Plaintiffs have not identified a particular section of the FDCPA that was violated, the statute is "extraordinarily broad," as it was enacted "in response to what Congress perceived to be a widespread problem." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008). The FDCPA provides generally that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Defendants' conduct did not constitute an unfair or unconscionable attempt to collect a debt. The Parrs initiated these negotiations, and Defendants merely responded to their inquiry regarding the purchase of property. Although Defendants rejected what may have been a reasonable offer, the FDCPA does not impose an obligation to enter into reasonable transactions; Defendants need only refrain from "unfair or unconscionable" attempts to collect debts. Defendants asked for a greater price than the Parrs wished to pay, but this is not unconscionable. The Court also notes that the Parrs were represented by counsel throughout the negotiations. Because Plaintiffs have failed to demonstrate that Defendants' conduct was unfair, unconscionable, or otherwise abusive, the Court grants summary judgment for Defendants on the FDCPA claim.

Plaintiff's claim against Bank of New York fails for a second reason, as the Bank did not act as a "debt collector" under the FDCPA. The statutory definition of "debt collector" excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." *Id.* § 1692(a)(6)(A). Thus, the statute "limits its reach to those collecting 'debts of another' and does not apply to the activities of a creditor collecting its own debts." *Scott v. Home Am.*, No. 09-cv-10810, 2009 U.S. Dist. LEXIS 94456, at *11 (E.D. Mich. Oct. 9, 2009). Plaintiffs allege that Bank of New York owns the debt at issue. Compl. ¶ 4. The FDCPA therefore does not apply to Bank of New York's activities in collecting that debt.

**D. Michigan Collection Practices Act Claim**

In their response to Defendants' Motion for Summary Judgment, Plaintiffs offered to withdraw and dismiss their claim under the Michigan Collection Practices Act. Pls.' Br.

15. The Court therefore grants summary judgment for Defendants on this claim.

## IV. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:

Keith A. Schofner, Esq.
Melissa M. Benton, Esq.
John A. Behrendt, Esq.